# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
Assigned on Briefs September 7, 2011

## COREY HENNINGS v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Madison County**
**No. C-10-302     Roy B. Morgan, Jr., Judge**

---

**No. W2010-02630-CCA-R3-PC  - Filed October 6, 2011**

---

The petitioner, Corey Hennings, appeals the dismissal of his petition for post-conviction relief from his attempted first degree murder conviction, arguing that he was denied the effective assistance of counsel and that his guilty plea was unknowing and involuntary. Following our review, we affirm the dismissal of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the Court, in which THOMAS T. WOODALL and JEFFREY S. BIVINS, JJ., joined.

Mike Mosier, Jackson, Tennessee, for the appellant, Corey Hennings.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; James G. (Jerry) Woodall, District Attorney General; and Jody S. Pickens, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTS

On December 14, 2009, the petitioner entered a best interest guilty plea to attempted first degree murder in exchange for a Range I sentence of twenty years in the Department of Correction. At the guilty plea hearing, the prosecutor recited the following factual basis for the plea:

> Your Honor, upon trial in this matter the State would show that on or about May 31, 2009 [the petitioner], also known as Slo Mo, was in the area of 239A Lincoln Courts.

He was engaged in an argument with Latoya Smith. At some point during the argument, [the petitioner] retrieved a gun and shot Felecia Wilbourn, who was a neighbor and who was there during the time that this argument was ongoing. He shot her twice. As a result of her being shot, she is paralyzed from the face down.

The petitioner filed a *pro se* petition for post-conviction relief on October 14, 2010, followed by an amended petition on November 23, 2010, after the appointment of post-conviction counsel, in which he alleged that his guilty plea was unknowing and involuntary and that he was denied the effective assistance of trial counsel. Specifically, he asserted that counsel was deficient in her representation, which led to his unknowing and involuntary plea, because she failed to adequately advise him about the case, including the ramifications of his guilty plea; failed to provide him with complete discovery; failed to investigate the defense of self-defense; and failed to investigate his history of mental issues or to request a mental evaluation.

At the evidentiary hearing, the petitioner's mother, Beverly Hennings, testified that the petitioner had spinal meningitis as a four-year-old child, which "led to some kind of brain damage" and resulted in his being placed in special education classes in school. She acknowledged, however, that the petitioner was able to read and write and that he had regularly written to both her and his sister since his incarceration. She said that the petitioner was remorseful for having shot the victim, and she identified a letter of apology that the petitioner had written to the victim from prison, which was admitted as an exhibit to the hearing.

The petitioner testified that trial counsel visited him only once or twice during the five to six months she represented him. He said he did not really understand the case against him and felt as if he needed more time to consult with trial counsel. He at first stated that trial counsel never discussed self-defense with him. During cross-examination, however, he amended his testimony to claim that counsel told him that the defense of self-defense was not available in Tennessee. The petitioner also expressed his belief that counsel failed to provide him with full discovery in the case, testifying that he had heard that his ex-girlfriend had written a statement but that he never received a copy of it.

The petitioner testified that he "might have mentioned" to counsel that he had been a special education student. He said that he told counsel to talk to his mother about his background but did not know whether she ever did. He stated that he never underwent a mental evaluation and, although he "sort of" understood the guilty plea proceedings, counsel failed to fully and completely explain the process to him. He claimed, thus, that he did not know he could have rejected the State's offer and chosen to go to trial.

On cross-examination, the petitioner acknowledged that he knew, at the time he entered his plea, that he faced a sentence of fifteen to twenty-five years if convicted at trial. He conceded that he was familiar with the process of entering guilty pleas, having previously pled guilty in at least two prior felony cases. Finally, he admitted that he informed the trial court at the guilty plea hearing that he was happy with counsel's representation.

On redirect examination, the petitioner testified that the victim was holding a butcher knife at the time he shot her.

Trial counsel, who said that she had been licensed to practice law for thirteen years and had been working for the public defender's office for the past three and a half years, estimated that she had handled hundreds, if not thousands, of criminal cases during her career. She said that she had copied the discovery materials she received from the State, which had an open-file policy, and forwarded them to the petitioner on November 17, 2009. She also provided to the petitioner a copy of the State's notice of enhanced punishment, which listed his three prior felony convictions.

Trial counsel testified that one of the first things that she discussed with the petitioner was his possible defenses, including the defense of self-defense, because she read in one of the police reports a witness's account of having seen the victim with a knife. In relating the sequence of events, however, the petitioner told her that after the argument broke out, he and his family had gone back into their house and shut the door. She asked if the victim had tried to enter the home, and the petitioner replied that she had not but that he had retrieved his gun, gone back outside, and shot the victim. The petitioner also told her that he had not seen the victim with a knife, but he had heard someone say something about a knife. Trial counsel stated that she explained to the petitioner that, once he and his family had safely retreated from the scene and were no longer threatened, the defense of self-defense was no longer an option.

Trial counsel testified that she got the impression in her dealings with the petitioner that he was "somewhat slow," so she asked him if he had been in special education classes in school or ever received any mental health treatment. As she recalled, the only thing the petitioner mentioned was that he had experienced some learning disabilities in school. He had, however, sent her letters, so she knew that he was able to read and write. In addition, he expressed tremendous remorse for the shooting, indicating that he knew the difference between right and wrong, assisted her in his defense, appeared to understand everything that was going on, and had prior experience with the criminal justice system. She, therefore, did not believe that a forensic evaluation was warranted.

Trial counsel testified that she recommended that the petitioner accept the plea deal because of the strong evidence against him, which included two eyewitnesses who had identified him as the shooter and the sympathetic victim, who had been permanently paralyzed by the shooting. She said that the petitioner wanted a deal with less time, but she explained to him that the State's offer was non-negotiable. The petitioner asked thoughtful questions and was involved and engaged throughout her representation. In short, he gave "no indication whatsoever" that he was not comprehending the process or did not understand exactly what was going on.

On cross-examination, trial counsel testified that she asked the petitioner's mother, who told her that the petitioner had been in special education classes, the same questions that she asked the petitioner about his prior mental history and school records. Based on her answers, she saw no reason to request a mental evaluation. Counsel said that she attempted to get the petitioner's records from "Pathways," which the petitioner told her he had attended, but the facility could not locate any records on him. She also made a number of unsuccessful attempts to obtain his school records.

The post-conviction court dismissed the petition at the conclusion of the hearing, issuing oral findings of fact and conclusions of law, which were followed by a written order entered on December 20, 2010. The court found, among other things, that the petitioner had no difficulty communicating and exhibited during his guilty plea colloquy a thorough understanding and knowledge of what he was doing in entering the plea, including that he had the right to proceed to trial rather than plead guilty. The court, therefore, concluded that the petitioner had failed to establish his allegations by clear and convincing evidence.

## ANALYSIS

On appeal, the petitioner contends that trial counsel was defective for not investigating his mental health issues or seeking a mental evaluation and that such deficiency led to his entry of an unknowing and involuntary guilty plea. Specifically, he argues that because counsel suspected that he was "slow," she should not only have investigated his mental history more thoroughly but also should have requested a mental evaluation. He asserts that his "mental condition was a thread that was woven throughout his case . . . and . . . affected every aspect of his case leading up to the guilty plea." In support, he cites his testimony as to his belief that he was not provided with full discovery and was not made aware of the defense of self-defense. The State argues that the post-conviction court properly denied the petitioner relief because he failed to prove his allegations by clear and convincing evidence. We agree with the State.

Post-conviction relief "shall be granted when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103 (2006). The petitioner bears the burden of proving factual allegations by clear and convincing evidence. Id. § 40-30-110(f). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. See Wiley v. State, 183 S.W.3d 317, 325 (Tenn. 2006). When reviewing factual issues, the appellate court will not reweigh the evidence and will instead defer to the trial court's findings as to the credibility of witnesses or the weight of their testimony. Id. However, review of a trial court's application of the law to the facts of the case is *de novo*, with no presumption of correctness. See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998). The issue of ineffective assistance of counsel, which presents mixed questions of fact and law, is reviewed *de novo*, with a presumption of correctness given only to the post-conviction court's findings of fact. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001); Burns v. State, 6 S.W.3d 453, 461 (Tenn. 1999).

To establish a claim of ineffective assistance of counsel, the petitioner has the burden to show both that trial counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceeding. Strickland v. Washington, 466 U.S. 668, 687 (1984); see State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The Strickland standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). The prejudice prong of the test is satisfied by showing a reasonable probability, *i.e.*, a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. In the context of a guilty plea, the petitioner must show a reasonable probability that were

it not for the deficiencies in counsel's representation, he would not have pled guilty but would instead have insisted on proceeding to trial. Hill v. Lockhart, 474 U.S. 52, 59 (1985); House v. State, 44 S.W.3d 508, 516 (Tenn. 2001).

The petitioner argues that trial counsel was deficient, thereby prejudicing his case, by her failure to obtain his mental health records or to request a mental evaluation. However, trial counsel's testimony, which was obviously accredited by the post-conviction court, was that she unsuccessfully sought copies of the petitioner's school and counseling records and saw no reason, based on her experience with the petitioner, to request a forensic evaluation. The petitioner was able to read and write, communicated with her well, asked thoughtful questions, expressed remorse for the shooting, and in general appeared to fully understand the case, including the guilty plea proceedings. Moreover, as the State points out, the petitioner failed to produce any of the alleged missing mental health records at the evidentiary hearing, despite faulting trial counsel for her inability to locate them. As such, he cannot show that he was prejudiced by their omission. See Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990).

We note that trial counsel also testified that she provided the petitioner with copies of discovery and fully discussed with him why the defense of self-defense was not feasible, as well as the reasons for her recommendation that he accept the plea offer. We conclude, therefore, that the petitioner has not met his burden of demonstrating that he was denied the effective assistance of counsel.

In an interrelated argument, the petitioner argues that counsel's deficiencies in seeking his mental health records and a mental evaluation resulted in his entry of an involuntary and unknowing guilty plea. When analyzing a guilty plea, we look to the federal standard announced in Boykin v. Alabama, 395 U.S. 238 (1969), and the state standard set out in State v. Mackey, 553 S.W.2d 337 (Tenn. 1977). State v. Pettus, 986 S.W.2d 540, 542 (Tenn. 1999). In Boykin, the United States Supreme Court held that there must be an affirmative showing in the trial court that a guilty plea was voluntarily and knowingly given before it can be accepted. 395 U.S. at 242. Similarly, our Tennessee Supreme Court in Mackey required an affirmative showing of a voluntary and knowledgeable guilty plea, namely, that the defendant has been made aware of the significant consequences of such a plea. Pettus, 986 S.W.2d at 542.

A plea is not "voluntary" if it results from ignorance, misunderstanding, coercion, inducements, or threats. Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993). The trial court must determine if the guilty plea is "knowing" by questioning the defendant to make sure he or she fully understands the plea and its consequences. Pettus, 986 S.W.2d at 542; Blankenship, 858 S.W.2d at 904. Because the plea must represent a voluntary and intelligent

choice among the alternatives available to the defendant, the trial court may look at a number of circumstantial factors in making this determination. Blankenship, 858 S.W.2d at 904. These factors include: (1) the defendant's relative intelligence; (2) his familiarity with criminal proceedings; (3) whether he was represented by competent counsel and had the opportunity to confer with counsel about alternatives; (4) the advice of counsel and the court about the charges against him and the penalty to be imposed; and (5) the defendant's reasons for pleading guilty, including the desire to avoid a greater penalty in a jury trial. Id. at 904-05.

The transcript of the guilty plea hearing reveals that the trial court appropriately informed the petitioner of his constitutional rights and of the specific rights he was waiving by pleading guilty. The petitioner assured the trial court that his counsel had discussed the plea agreement with him, that he fully understood its terms and the constitutional rights he was waiving by entering his plea, and that he was freely and voluntarily entering the plea because he believed it was in his best interest to do so.

The record also shows that the petitioner, who said he was working on his GED, is able to communicate his ideas fairly well, both verbally and in writing. In the letter he wrote to the victim, for example, he expressed his remorse for his actions and his intention to "strive tireless[ly]" to help the victim reach her "fullest p[o]tential." We conclude, therefore, that the record shows that the petitioner's guilty plea was knowingly, intelligently, and voluntarily entered.

## CONCLUSION

Based on our review, we conclude that the petitioner has not met his burden of showing that trial counsel was ineffective in her representation or that the petitioner's guilty plea was unknowing and involuntary. Accordingly, we affirm the dismissal of the petition for post-conviction relief.

_____
ALAN E. GLENN, JUDGE